UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN E. HUDSON,

               Plaintiff,

v.                                         **DECISION AND ORDER**
                                                  04-CV-1028S

GREYHOUND LINES, INC. and
GLI HOLDING COMPANY,

               Defendants.

## I. INTRODUCTION

On December 23, 2004, Plaintiff John E. Hudson commenced this employment discrimination action by filing a Complaint in the United States District Court for the Western District of New York. Therein, Plaintiff alleges seven causes of action related to hostile work environment, race discrimination, and retaliation claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Civil Rights Act of 1870, as amended, 42 U.S.C. § 1981 ("§ 1981"), and § 290 of the New York Human Rights Law ("NY HRL").

Presently before this Court is Defendants' Motion to Dismiss Plaintiff's Complaint.[1] For the reasons discussed below, Defendants' motion is granted in part and denied in part, and Plaintiff is granted leave to file an Amended Complaint consistent with this Decision and Order.

---

[1] In support of their Motion to Dismiss, Defendants filed a memorandum of law, with attachments, and a reply memorandum of law. In opposition to Defendants' motion, Plaintiff filed a memorandum of law and a sur-reply (without permission).

1

## II. BACKGROUND

**A.     Facts**

In adjudicating Defendants' Motion to Dismiss, this Court assumes the truth of the following factual allegations contained in the Complaint.  See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Plaintiff is an African-American male who resides in the City of Buffalo.  (Complaint, ¶ 3.)  He began working for Defendants as a bus driver on or about June 20, 1975.  (Complaint, ¶ 13.)  During his employment with Defendants, Plaintiff was bypassed for work assignments, referred to in racially derogatory terms and was harassed and mistreated while out on medical leave.  (Complaint, ¶ 15.)

In the early 1980s, Plaintiff was bypassed for work assignments and was referred to by Defendants' employees as "liar," "con," and "nigger."  (Complaint, ¶ 16.)  In September of 1989, Plaintiff filed a grievance with his Union regarding the mistreatment to which he had been subjected.  (Complaint, ¶ 17.)  An investigation was conducted and a manager employed by Defendants was terminated.  (Id.)  Thereafter, Defendants retaliated against Plaintiff for filing this grievance by denying him work assignments, refusing to assign him to charters when he was requested by the customer, and assigning him undesirable work.  (Complaint, ¶ 18.)

On or about January 19, 1990, Plaintiff was injured on the job and placed on medical leave.  (Complaint, ¶ 19.)  In July of 1993, Defendants advised Plaintiff that his employment would be terminated if he did not return to work.  (Id.)  Plaintiff thereafter returned to work and further injured his left shoulder.  (Id.)  In September of 1993,

Defendants' doctor determined that Plaintiff was unable to return to work due to his work-related shoulder injury. (Id.)

On December 3, 1993, while Plaintiff was out on disability, Defendants terminated his employment. (Complaint, ¶ 20.) Plaintiff's employment was reinstated, however, after Plaintiff retained counsel and initiated a lawsuit. (Id.) Although reinstated, Plaintiff remained medically unable to return to work. (Id.)

On April 29, 1996, Plaintiff underwent unsuccessful surgery and remained out of work. (Complaint, ¶ 21.) In 1997, David Umbaugh, Defendants' Buffalo Terminal Manager, required Plaintiff to get a work physical. (Complaint, ¶ 22.) Plaintiff indicated on the medical forms that he was agreeing to take the physical "under protest" because he was still on medical leave. (Id.) Based on this representation, the physical was cancelled and Plaintiff was advised to report back to Mr. Umbaugh. (Id.)

When Plaintiff met with Mr. Umbaugh, he explained that he would submit to the physical "under protest." (Complaint, ¶ 23.) Mr. Umbaugh reported that he would advise Defendants that Plaintiff refused to submit to the physical and he instructed Plaintiff to leave. (Id.) Plaintiff complained to his union and Defendants about Mr. Umbaugh's conduct. (Complaint, ¶ 24.) Mr. Umbaugh was thereafter promoted and transferred. (Id.)

On or about December 7, 2000, Plaintiff underwent a second surgery, which this time was successful. (Complaint, ¶ 27.) Plaintiff was released to return to work for full duty as of November 13, 2001. (Id.) To prepare for his return to work, Plaintiff met with John Comstock, who was now the Buffalo Terminal Manager. (Complaint, ¶ 28.) Plaintiff provided Mr. Comstock with his medical clearance papers from his doctor, at which time Mr. Comstock advised Plaintiff that he would schedule the necessary appointments for him

to be able to return to work (e.g., physical, drug screening, safety refresher course).  (Id.)

Between November 13, 2001, and March of 2002, Plaintiff made numerous attempts to contact Mr. Comstock.  (Complaint, ¶¶ 29, 30.)  Moreover, in February of 2002, Plaintiff called Defendants' offices in New York City to complain that he was not being scheduled back to work.  (Complaint, ¶ 31.)  Plaintiff was advised that he should wait for his physical to be scheduled.  (Id.)

During the first week in March of 2002, Plaintiff called Defendants' human resources office to inquire as to his employment status.  (Complaint, ¶ 32.)  He was advised that his employment with Defendants had been terminated.  (Id.)  Plaintiff then went to Defendants' local office in Buffalo to review his personnel file in the presence of Mr. Comstock.  (Complaint, ¶ 33.)  Upon review of his file, Plaintiff discovered that he had been written up for insubordination in 1998.  (Id.)  When Plaintiff asked Mr. Comstock how he could have been written up when he was out on work-related disability at that time, Mr. Comstock refused to allow him to further review his file.  (Id.)

Plaintiff contends that other similarly situated Caucasian drivers who were on medical leave and brought medical clearance papers back to Defendants were scheduled for physicals in compliance with Defendants' policies.  (Complaint, ¶ 35.)  He further alleges that Defendants' failure to schedule his physical and their subsequent actions in terminating him were the result of continued discrimination, harassment and retaliation against him because of his race and because of his prior complaints of discrimination and harassment.  (Complaint, ¶ 36.)

**B.     Procedural History**

Plaintiff commenced this action on December 23, 2004, by filing a Complaint in the

United States District Court for the Western District of New York.  Defendants filed the instant Motion to Dismiss on June 2, 2005.  Thereafter, on August 12, 2005, Plaintiff's counsel moved to withdraw.  This Court granted that motion and extended Plaintiff's deadline to respond to Defendants' motion.  Proceeding pro se, Plaintiff filed a response to Defendants' motion on November 28, 2005.  Defendants filed their reply on December 12, 2005.  This Court took the motion under advisement without oral argument.

### III. DISCUSSION

**A.      Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a Complaint for "failure to state a claim upon which relief can be granted."  As noted above, all well-pleaded factual allegations contained in the Complaint are assumed true and construed in the non-moving party's favor.  See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999); Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996).  "The issue [on a Rule 12(b)(6) motion] is not whether a plaintiff will or might ultimately prevail on her claim, but whether she is entitled to offer evidence in support of the allegations in the complaint." Hamilton Chapter, 128 F.3d at 62 (citation omitted); see also Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995); Racker v. St. Bonaventure Univ., 04-CV-125, 2005 WL 1522797, at *3 (W.D.N.Y. June 28, 2005).  Dismissal on the face of the Complaint is therefore proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief." Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir.1994) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

If it appears from the face of the Complaint that a cause of action has not been

brought within the applicable statute of limitations period, the defense of limitations "may be raised in a pre-answer motion pursuant to Fed. R. Civ. P. 12(b)(6)." Santos v. Dist. Council of New York City, 619 F.2d 963, 967 n.4 (2d Cir. 1980); Ghartley v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989). "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991). If the plaintiff does not attach or incorporate by reference documents that are integral to the Complaint, the court may consider those documents without converting the motion to one seeking summary judgment. See Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam).

Federal pleading standards are generally not stringent. See Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005) (describing federal pleading requirement as "bare bones notice pleading"); Phillip v. Univ. of Rochester, 316 F.3d 291, 293 (2d Cir. 2003) ("The federal rules allow simple pleadings and rely on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." (quotation and citation omitted)). Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47. Fair notice is "that which will enable the adverse party to answer and prepare for trial." Lee v. HealthFirst, Inc., No. 04 Civ. 8787, 2006 WL 177175, at *3 (S.D.N.Y. Jan. 25, 2006) (quoting Wynder v. McMahon, 360 F.3d 73, 79 (2d Cir. 2004)).

In the context of employment discrimination claims, the United States Supreme

Court has clarified that the Complaint must meet only the notice pleading requirements of Rule 8(a)(2): "An employment discrimination plaintiff need not plead a prima facie case of discrimination." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515, 122 S. Ct. 992, 999, 152 L.Ed.2d 1 (2002). In Swierkiewicz, the Supreme Court found that the prima facie showing required of employment discrimination plaintiffs is "an evidentiary standard, not a pleading requirement," id. at 510, and it held that a plaintiff alleging employment discrimination need not plead all the elements of a prima facie case so long as the Complaint provides the defendant "fair notice of what [the] claims are and the grounds upon which they rest" in accordance with Rule 8, id. at 514. See also Racker, 2005 WL 1522797, at *3 (discussing Swierkiewicz).

Nonetheless, the Court in Swierkiewicz noted that an employment discrimination Complaint could still be dismissed under Rule 12(b)(6) "if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." Id. at 512 (quoting Hishon v. King & Spaulding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). In this regard, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Smith v. Local 8191 B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (citation and quotation omitted); Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996) ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."). "It must be clear from a discrimination complaint 'what adverse employment action or actions serve as the basis for [a plaintiff's] . . . discrimination claim [thereby] giv[ing] fair notice in her complaint of the grounds upon which her claim that those actions were discriminatory rests." Lee, 2006 WL 177175, at *5 (quoting Galvez v. New York Mortg. Co., LLC, No. 05 Civ. 2365, 2005 WL

2124112, at *4 (S.D.N.Y. Sept. 1, 2005) (alterations in original).

In light of Swierkiewicz, the two relevant inquiries on a Rule 12(b)(6) motion are (1) whether the Complaint provides the defendants fair notice of the claims and the grounds upon which they rest, and (2) whether the facts alleged in the Complaint state a claim upon which relief can be granted. See id. at 514 (holding that a Complaint is sufficient if it gives the defendant fair notice of the plaintiff's claims, the grounds upon which they rest, and states claims upon which relief could be granted); see also Lee, 2006 WL 177175, at *5; Brady v. Dammer, 04 CV 1126, 2005 WL 1871183, at *1 (N.D.N.Y. Aug. 3, 2005); Racker, 2005 WL 1522797, at *4 ("if the employment discrimination plaintiff satisfies the "fair notice" pleading standard of Rule 8, the court must still determine whether the plaintiff has pleaded facts sufficient to state a viable claim upon which relief can be granted pursuant to Rule 12(b)(6)") (relying on Timothy v. Our Lady of Mercy Med. Ctr., 03 Civ. 3556, 2004 WL 503760 (S.D.N.Y. Mar. 12, 2004)).

Finally, this Court notes that Plaintiff's pro se status entitles his submissions to broad consideration. Because of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally, and interpret them to raise the strongest arguments that they suggest. See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L.Ed.2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). "This is especially true when dealing with pro se complaints alleging civil rights violations." Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 146 (2d Cir. 2002).

**B.     Defendants' Motion to Dismiss**

As noted above, Plaintiff's seven causes of action are brought pursuant to Title VII, § 1981 and the NY HRL. Defendants argue that the majority of Plaintiff's allegations and

claims are time-barred. Further, Defendants argue that because the untimely claims are incorporated into each cause of action, the Complaint must be dismissed because Defendants cannot properly Answer the Complaint. Plaintiff's causes of action are addressed below.

   1.   **Title VII**

Plaintiff's first, third and fifth causes of action allege violations of Title VII based on hostile work environment, disparate treatment race discrimination and retaliation, respectively. (Complaint, ¶¶ 40-47, 55-64, 75-81.) Defendants argue that Plaintiff's claims are time-barred because they incorporate factual allegations that occurred more than 300 days prior to the date Plaintiff filed his EEOC charge. Plaintiff argues that the continuing violations doctrine applies because the incidents alleged in his Complaint were part of an ongoing discrimination against him.

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1); Desert Palace, Inc. v. Costa, 539 U.S. 90, 92-93, 123 S.Ct. 2148, 2150, 156 L.Ed.2d 84 (2003).

In order to maintain an action under 42 U.S.C. §2000e-5, a plaintiff must ordinarily file a timely charge with the EEOC, receive from that agency a right to sue letter, and file an action within 90 days of receipt of that letter. Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996); Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994). Because New York is a state with a fair employment agency, a charge of discrimination must be filed with the EEOC or the New York State Department of Human Rights within

9

300 days of the alleged discrimination. 42 U.S.C. §2000e-5(e); Harris v. City of New York, 186 F.3d 243, 247 n. 2 (2d Cir. 1999).

"The timeliness of a discrimination claim is to be measured from the date the claimant had notice of the allegedly discriminatory action." Van Zant, 80 F.3d at 713 (citing Morse v. Univ. of Vermont, 973 F.2d 122, 125 (2d Cir. 1992)).  The 300 day filing requirement "functions as a statute of limitations." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998).  The 300 day statute of limitations is strictly construed in this circuit. See, e.g., Trenchfield v. DuPont Photomasks, Inc., No. 96 CIV. 1135 (AGS), 1997 WL 53238, at *5-*6 (S.D.N.Y. 1997) (Title VII claims filed with the EEOC 338 days after alleged discriminatory employment practice dismissed as untimely); Van Zant v. KLM Royal Dutch Airlines, 870 F.Supp. 572, 575 (S.D.N.Y. 1994) (sexual harassment and retaliation claims dismissed as time-barred where last alleged discriminatory act was 315 days before EEOC filing).  Moreover, the Supreme Court has noted that "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108, 122, S.Ct.2061, 2070, 153 L.Ed.2d 106 (2002) (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)).

Here, Plaintiff filed his charge with the EEOC on November 7, 2002. (Defendants' Memorandum of Law, Exh. A.)  Accordingly, any alleged incidents occurring prior to January 11, 2002 (300 days prior to November 7, 2002) are time-barred. See Miller v. New York City Health & Hosp. Corp., No. 00 Civ. 140, 2004 WL 1907310, at *3 (S.D.N.Y. Aug. 25, 2004) ("An incident that was not charged to the EEOC or DHR within 300 days of its occurrence is time-barred.").  However, Plaintiff argues that the continuing violation

doctrine saves his untimely claims because all of the incidents alleged are part of a continuing pattern of discrimination.

"The 'continuing violation' doctrine holds that an act that occurs within 300 days of an EEOC charge may implicate – and therefore make timely – incidents otherwise outside of the mandatory filing deadlines." Miller, 2004 WL 1907310, at *3 (citing Morgan, 536 U.S. at 114-21). "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Cornwell, 23 F.3d at 704. For example, the Second Circuit has stated that: "The continuing violation exception applies to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists, or discriminatory employment tests. However, multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993) (citations omitted). Thus, discrete acts are generally insufficient to constitute a continuing violation. See Morgan, 536 U.S. at 114 (termination, failure to promote, denial of transfer and refusal to hire are discrete acts constituting separate actionable unlawful employment practices); Lightfood v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997) (repeated demotions and denial of pay increases not sufficient for continuing violation theory).

Even assuming the truth of all of its allegations, Plaintiff's Complaint does not implicate the continuing violation doctrine. Plaintiff alleges discrete incidents of disparate treatment, not a discriminatory policy or mechanism. See Bailey, 2003 WL 21108325, at

11

*9 (discussing the fact that failure to set forth discriminatory policy or mechanism is fatal to application of the continuing violation doctrine). Plaintiff does not allege an ongoing policy, practice or mechanism of a discriminatory nature endorsed by Defendants. Moreover, there is no allegation that the individual incidents of discrimination alleged by Plaintiff were permitted by Defendants to continue unremedied for so long as to amount to a discriminatory policy or practice. Further, the continuing violation doctrine is disfavored in this circuit. See Samimy, 961 F.Supp. at 493 (citing cases).

Only compelling circumstances will warrant application of the continuing violation exception to the statute of limitations. Blesedell v. Mobil Oil Co., 708 F.Supp. 1408, 1415 (S.D.N.Y. 1989) (citing LaBeach v. Nestle Co., 658 F.Supp. 676, 687 (S.D.N.Y. 1987)). No such circumstances are pled in the Complaint. As noted, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." Lambert, 10 F.3d at 53. Accepting all of Plaintiff's allegations as true, this Court finds that the continuing violation doctrine is not implicated.

Defendants' Motion to Dismiss Plaintiff's Title VII claims occurring prior to January 11, 2002 is granted. Moreover, the first cause of action – Plaintiff's Title VII hostile work environment claim – must be dismissed in its entirety because according to the face of the Complaint, the last time Plaintiff actively worked for Defendants was in 1993. Thus, Plaintiff could not have been subjected to an act creating a hostile work environment within the statute of limitations period. See Morgan, 536 U.S. at 114. Plaintiff will be directed to file an Amended Complaint to include only those factual allegations falling within the statute of limitations period that support his Title VII race discrimination and retaliation

claims (the third and fifth causes of action).

**2.    § 1981**

Plaintiff's seventh cause of action alleges that Defendants intentionally discriminated against him on the basis of his race in violation of § 1981.  (Complaint, ¶¶ 90-98.)

Forty-two U.S.C. § 1981(a) provides as follows:

> (a) Statement of equal rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

A § 1981 claim consists of the following elements: (1) membership in a racial minority; (2) an intention to discriminate on the basis of race by the defendants; and (3) discrimination concerning one or more of the activities enumerated in the statute.  See Brown v. City of Oneonta, NY, 221 F.3d 329, 339 (2d Cir. 2000); Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1995) (per curiam).

In pleading a § 1981 claim, the Complaint must do more than merely assert that racial discrimination occurred.  See Richardson v. Sec. Unit Employees Council 82, No. 99-CV-1021E(SR), 2001 WL 392089, *4 (W.D.N.Y. Mar. 27, 2001).  To survive a motion to dismiss, the § 1981 claim must "specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent."  Yusuf v. Vassar Coll., 35 F.3d 709, 713 (2d Cir. 1994).  "In other words, a proper pleading under section 1981 must set out *facts* that demonstrate that

13

the plaintiff's race was the reason for the defendants' conduct." Burgin v. Toys-R-Us-Nytex, Inc., No. 97-CV-998E, 1999 WL 454302, at *2 (W.D.N.Y. June 30, 1999) (emphasis added) (citing Waldron v. Rotzler, 862 F.Supp. 763, 767 (N.D.N.Y. 1994)).

Claims alleging violations of § 1981 are subject to the four-year catchall statute of limitations set forth in 28 U.S.C. § 1658(a). See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-83, 124 S.Ct. 1836, 1845-46, 158 L.Ed.2d 645 (2004). Plaintiff filed his Complaint in this case on December 23, 2004. Thus, the only timely § 1981 claims are those occurring on or after December 23, 2000. Defendants' Motion to Dismiss those claims falling prior to December 23, 2000 is granted. Plaintiff is granted leave to file an Amended Complaint, which shall include only those allegations occurring on or after December 23, 2000.

### 3. NY HRL

Plaintiff's second, fourth and sixth causes of action allege violations of the NY HRL. (Complaint, ¶¶ 48-54, 65-74, 82-89.)

The NY HRL provides that it shall be an unlawful discriminatory practice for any employer "to bar or to discharge from employment such individual or to discriminate against such individual" on account of sex or age. N.Y. Exec. Law. § 296(1)(a). The legal standards governing NY HRL claims are the same as those applicable to Title VII claims. See Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000); Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1177 (2d Cir. 1996).

The statute of limitations for discrimination claims brought under the NY HRL is three years. See N.Y. C.P.L.R. § 214 (McKinney 2002); Greene v. Trs. of Columbia Univ., 234 F.Supp.2d 368, 377 (S.D.N.Y. 2002). As such, since Plaintiff's Complaint was filed

14

on December 23, 2004, only those claims occurring on or after December 23, 2001, are timely. As was the case with Plaintiff's Title VII hostile work environment claim, Plaintiff's second cause of action – his NY HRL hostile work environment claim – must be dismissed in its entirety because Plaintiff could not have been subjected to an act creating a hostile work environment within the statute of limitations period based on the fact that he last worked for Defendants in an active capacity in 1993.

Defendants' Motion to Dismiss Plaintiff's claims falling prior to December 23, 2001 is granted. Plaintiff is granted leave to file an Amended Complaint, which shall include only those allegations occurring on or after December 23, 2001.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is granted in part and denied in part. Plaintiff's untimely claims, as identified herein, are dismissed. Plaintiff is granted leave to amend his Complaint consistent with the foregoing decision for purposes of narrowing his Complaint to his timely claims, which appear to be those arising from his allegation that Defendants intentionally prevented him from returning to work after his medical clearance in November 13, 2001, due to his race and/or in retaliation for his complaints. (Complaint, ¶¶ 27-36.)

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 8) is GRANTED in part and DENIED in part.

FURTHER, that Plaintiff's Title VII and NY HRL hostile work environment claims (the first and second causes of action) are DISMISSED in their entirety.

FURTHER, that Plaintiff's remaining Title VII, § 1981 and NY HRL (the third through seventh causes of action) are DISMISSED to the extent that they include claims falling outside of the applicable statute of limitations period.

FURTHER, that Plaintiff is granted leave to amend his Complaint (the third through seventh causes of action) consistent with the foregoing decision.

FURTHER, that Plaintiff shall file and serve his Amended Complaint on or before April 3, 2006.

SO ORDERED.

Dated:     February 16, 2006
           Buffalo, New York

                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            United States District Judge